IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NATIONAL COUNCIL OF THE
UNITED STATES SOCIETY OF
ST. VINCENT DE PAUL, INC.,

                Plaintiff,

      v.

ST. VINCENT DE PAUL COMMUNITY
CENTER OF PORTAGE COUNTY, INC.,

                Defendant.

OPINION AND ORDER

16-cv-423-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This action for trademark infringement and unfair competition brought under the Lanham Act, 15 U.S.C. §§ 1051, et seq., is scheduled for trial on October 9, 2018. In an order entered on December 29, 2017, I found that plaintiff National Council of the United States Society of St. Vincent de Paul, Inc. was entitled to summary judgment with respect to defendant St. Vincent De Paul Community Center of Portage County, Inc.'s unjust enrichment counterclaim and many of defendant's affirmative defenses. Dkt. #84. However, I determined that plaintiff had failed to adduce sufficient evidence to prove as a matter of law that its claimed marks are protectable under the Lanham Act or that I should rule in its favor with respect to defendant's affirmative defenses of classic fair use and laches. Dkt. #84. Subsequently, plaintiff filed a motion to reconsider that order with respect to the distinctiveness and protectability of two of plaintiff's registered marks, defendant's

affirmative defenses of prior use and classic fair use, who is the senior user of various marks and plaintiff's trade name infringement claim. In an order entered on July 9, 2018, I found plaintiff's word mark (the '794 registration) to be distinctive and protectable as a matter of law and found that defendant may not rely on the affirmative defenses of prior use in 15 U.S.C. § 1115(b) or classic fair use. Dkt. #119. I denied plaintiff's motion in all other respects. However, I allowed plaintiff to submit further evidence to show that its design mark (the '318 registration) is incontestable as a matter of law and to explain what it believes to be the reach or scope of the '318 and '794 registrations and defendant's use of those specific marks. The parties' responses to that order are now before the court. Dkt. ##123, 126.

Because plaintiff has submitted evidence, which defendant has not disputed, that it met the requirements of 15 U.S.C. § 1065(3) by filing an affidavit with the director of the United States Patent and Trademark Office regarding its continued use of its design mark, I conclude that the '318 registration is incontestable as a matter of law. Now that plaintiff has established that its '318 and '794 registrations are protectable, the next step in proving its Lanham Act claims is showing that defendant's use of those marks are likely to cause confusion among consumers. CAE, Inc. v. Clean Air Engineering, Inc., 267 F.3d 660, 673-74 (7th Cir. 2001). In addition, a few questions remain as to who is the senior user of plaintiff's protected marks, whether defendant may assert the affirmative defense of laches and whether defendant's use of the protected marks is likely to cause "inevitable confusion," which would revive plaintiff's claim from estoppel by laches. Although I did not address

these issues in the initial summary judgment order because plaintiff had not yet shown any of its marks to be protectable as a matter of law, the parties had an opportunity to brief these issues in conjunction with plaintiff's motion for summary judgment and also discussed them in their responses to my latest order regarding plaintiff's motion for reconsideration. Therefore, in an effort to streamline issues for the October trial, I will revisit plaintiff's motion for summary judgment, dkt. #52, and address the issues of likelihood of confusion, senior user, laches and inevitable confusion, as they relate to the protected marks in the '318 and '794 registrations.

After reviewing all of the parties' submissions, I find that plaintiff is entitled to summary judgment with respect to: (1) liability on its Lanham Act claims regarding defendant's use of the marks that are the subject of plaintiff's '318 and '794 registrations; and (2) defendant's affirmative defense of laches, based on the fact that defendant's use of the marks would result in inevitable confusion. Although plaintiff seeks a permanent injunction under 15 U.S.C. § 1116(a), it has not satisfied the standard for obtaining one or discussed any proposed terms. Plaintiff also has not made clear whether it will be seeking any damages. Accordingly, I will give the parties an opportunity to brief these issues, identify whether there are any other issues remaining and inform the court whether the jury trial is necessary or if any remaining issues may be resolved after an opportunity for further briefing.

OPINION

Under the Lanham Act, a party may assert claims for trademark infringement, 15 U.S.C. § 1114(1) (registered marks), or unfair competition, 15 U.S.C. § 1125(a) (common law marks and trade names). "To prevail on either claim, a plaintiff must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers." <u>CAE</u>, 267 F.3d at 673-74. <u>See also</u> <u>Epic Systems Corp. v. YourCareUniverse, Inc.</u>, 244 F. Supp. 3d 878, 889 (W.D. Wis. 2017) (federal trademark infringement and unfair competition subject to same standard). As discussed above, I have found that plaintiff's '318 and '794 registrations are protectable as a matter of law. The '794 registration is for the word mark "Society of St. Vincent de Paul." The '318 registration is for a composite mark that includes the text "Society of St. Vincent de Paul U.S.A." and graphic element using the letters S, T, V, de and P.

In my previous order, I questioned the scope of protection of the '318 registration because defendant had used only the words appearing in the composite mark and not the composite mark as a whole. <u>In re Save Venice New York, Inc.</u>, 259 F.3d 1346, 1353 (Fed. Cir. 2001) ("A registered mark is incontestable only in the form registered and for the goods or services claimed."); 6 <u>McCarthy on Trademarks and Unfair Competition</u> § 32:152 (5th ed.) (discussing exceptions to incontestability and the scope of presumption as to goods and format). Although the parties argue whether plaintiff may rely solely on the words "Society of St. Vincent de Paul" in the composite mark in proving infringement or unfair competition, plaintiff points out correctly that it does not need to "bootstrap" a claim that

a single component of the '318 registration (i.e., the name "Society of St. Vincent de Paul") is distinctive and protectable by itself because I have held that plaintiff has a protectable word mark in that name, which is the subject of the '794 registration. Therefore, I will consider both plaintiff's word and composite marks in determining whether defendant's use of them is likely to cause confusion.

Before turning to the likelihood of confusion analysis and defendant's affirmative defense of laches, one other matter deserves attention. In the previous order, I declined to consider plaintiff's contention that it was entitled to judgment as a matter of law with respect to its being the senior user of all of its claimed marks, because even though plaintiff had adduced some evidence showing that it had been using the name "St. Vincent de Paul" since the 1800s and some version of the nickname "St. Vinnies" since the 1940s, it did not make that showing with any certainty, particularly with respect to its use of the marks prior to the early 2000s. However, plaintiff is correct that no reasonable jury could conclude that defendant was an innocent user of the St. Vincent de Paul name because defendant had knowledge of plaintiff's use of the mark when defendant began using it in the 1980s. In response to plaintiff's motion for summary judgment, defendant did not dispute that it has been aware of plaintiff's existence and the process of affiliating with plaintiff since defendant first started operating its thrift store in 1984. Summ. Jmt. Ord., dkt. #84 at 6. Defendant also did not dispute that without receiving permission from plaintiff, it began using the "St. Vincent de Paul" name in 1984 or 1985, identified itself as the "St. Vincent de Paul Society" on donation receipts in 1986, published the "Vinnie's Newsletter" in 1993 and renamed its

store "St. Vinnies Thrift Store" in November 2014.  Id. at 5-6.  Because defendant was well aware at the time it took these actions that plaintiff had been using the "St. Vincent de Paul" name, I agree that a reasonable jury would conclude that plaintiff is the senior user of the St. Vincent de Paul mark.

## A.  Likelihood of Confusion

"The 'keystone' of trademark infringement is 'likelihood of contusion' as to source, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers."  Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 957 (7th Cir. 1992).  "To decide whether there is a likelihood of confusion . . . a court must ask whether consumers, and specifically consumers who would use either product, would be likely to attribute them to a single source."  Board of Regents of University of Wisconsin System v. Phoenix Int'l Software, Inc., 653 F.3d 448, 455 (7th Cir. 2011).  "Possible confusion is not enough; rather, confusion must be 'probable.'"  Sorensen v. WD-40 Co., 792 F.3d 712, 726 (7th Cir. 2015) (internal citation omitted).

The Court of Appeals for the Seventh Circuit uses the following seven factors to determine the likelihood of confusion:  (1) the similarity between the parties' marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another.  Id.  No single factor is dispositive,

but three are especially important: the similarity of the marks, the intent of the defendant and the evidence of actual confusion. Id.; Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 898 (7th Cir. 2001). Although likelihood of confusion is a question of fact usually reserved for the jury, Board of Regents, 653 F.3d at 452, "[a] court may grant summary judgment even if there is a genuine issue of material fact as to one or more of the seven factors, as long as no reasonable jury, looking at the seven factors as a whole, could conclude that there is a likelihood of confusion." Sorenson, 792 F.3d at 726 (citing AHP Subsidiary Holding Co. v. Stuart Hale Co., 1 F.3d 611, 616 (7th Cir. 1993)).

For the reasons explained below, I find that looking at the seven factors as a whole, the evidence of confusion between defendant's marks and the marks that are the subject of the '318 and '794 registrations favors plaintiff so strongly that no reasonable jury could find in defendant's favor on this issue. As an initial matter, I find that the second factor weighs strongly in plaintiff's favor because defendant admits that it and plaintiff both operate "Vincentian-style" charities and thrift stores, meaning their "products" are almost identical. I address the remaining six factors below.

1.  Similarity of marks

"To determine whether two marks are similar, we view the marks as a whole" and "compare the marks in light of what happens in the marketplace and not merely by looking at the two marks side-by-side." AutoZone, Inc. v. Strick, 543 F.3d 923, 929-30 (7th Cir. 2008) (internal quotation marks omitted). "The test is not whether the public would

confuse the marks, but whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." Id. (quoting James Burrough Ltd. v. Sign of Beefeater, Inc., 540 F.2d 266, 275 (7th Cir. 1976)). "The court should therefore consider whether the customer would believe that the trademark owner sponsored, endorsed, or was otherwise affiliated with the product." Id. at 930 (citation and internal quotation marks omitted).

Both of plaintiff's marks include the name "Society of St. Vincent de Paul." Although plaintiff's composite mark also includes large letters in a graphic format, "if one word or feature of a composite trademark is the salient portion of the mark, it may be given more weight than the surrounding elements." International Kennel Club of Chicago, Inc. v. Mighty Star, Inc., 846 F.2d 1079, 1087-88 (7th Cir. 1988) (quoting Henri's Food Products Co. v. Kraft, Inc., 717 F.2d 352, 356 (7th Cir. 1983)). "Particularly where the public does not encounter the marks together, case law holds that it is inappropriate to focus on minor stylistic differences in determining the likelihood of confusion caused by the defendant's use of the allegedly infringing name." Id. at 1088. See also In re Viterra Inc., 671 F.3d 1358, 1363 (Fed. Cir. 2012) ("standard character mark is not limited to any particular font, size, style, or color"). Nevertheless, an inquiry into similarity will look at the entirety of the marks, not just one specific component. AutoZone, 543 F.3d at 929; Unity Health Plans Insurance Co. v. Iowa Health System, 995 F. Supp. 2d 874, 888 (W.D. Wis. 2014).

Defendant does not dispute that it used the names "St. Vincent de Paul Community Center, Inc.," "St. Vincent de Paul's Thrift Center," "St. Vincent de Paul," "St. Vincent de

Paul Store," "St. Vincent de Paul Thrift Store" and "St. Vincent de Paul Society" to refer to its thrift store and charitable services at various times since 1984.  The only difference between those marks and plaintiff's "Society of St. Vincent de Paul" mark are common descriptive terms such as "community center" or "thrift store."  In addition, "the presence of an additional term in the mark does not necessarily eliminate the likelihood of confusion if some terms are identical."  In re Mighty Leaf Tea, 601 F.3d 1342, 1347-48 (Fed. Cir. 2010).  Accordingly, I conclude as a matter of law that defendant has appropriated the dominant portion of plaintiff's marks.  International Kennel Club, 846 F.2d at 1088 ("International Kennel Club of Chicago" versus "International Kennel Club"); Hyatt Corp. v. Hyatt Legal Services, 736 F.2d 1153, 1159 (7th Cir. 1984) ("Hyatt Hotels" versus "Hyatt Legal Services").

Since 2014, defendant has been operating its store under the name "St. Vinnies Thrift Store," which uses a shortened version of the "St. Vincent de Paul" name.  It also used "Vinnie's" in a newsletter in 1993.  Plaintiff has not yet completed registration of the "St. Vinnie's" word mark and I have not ruled on whether that mark is protectable.  However, there is evidence that plaintiff has used this abbreviation of its mark for some time and that "St. Vinnies" is commonly understood to be an abbreviation for "St. Vincent de Paul" and plaintiff's stores. Johnny Blastoff, Inc. v. Los Angeles Rams Football Co., 188 F.3d 427, 434 (7th Cir. 1999) (internal citation omitted) ("[A]bbreviations and nicknames of trademarks or names used only by the public give rise to protectable rights in the owners of the trade name or mark which the public modified."); Forum Corp. of North America v. Forum, Ltd.,

903 F.2d 434, 441 (7th Cir. 1990) (noting that changing name from "The Forum Corporation of North America" to "The Forum Corporation" or simply "The Forum" had little import and did not free accused infringer from responsibility to avoid confusion). For example, in support of its motion for summary judgment, plaintiff submitted a newspaper article that states:

> Some places become so common in communities, everyone expects a city to have one. They even have a nickname. When people talk about St. Vinny's, they're referring to the Society of St. Vincent de Paul and its resale and donation sites in Baraboo, Mauston, Portage, Reedsburg, Prairie du Sac and Wisconsin Dells.

Dkt. #56, exh. #2. Like defendant's other uses of the mark, "St. Vinnies" is similar to and likely to be confused with plaintiff's "Society of St. Vincent de Paul" marks, at least as they relate to thrift stores raising money for charitable services.

In sum, considering the parties' thrift stores and services as a whole, including their overall appearance, signage, purpose and charitable services, I find that plaintiff has shown that consumers encountering them in the marketplace would believe that the parties' stores and services are part of the same organization or sponsored by it. 4 McCarthy § 23:20.50 (when goods and services are directly competitive, degree of similarity required to prove likelihood of confusion is less). In fact, as discussed below, there is evidence that consumers and members of the public have assumed that defendant is associated with plaintiff. Therefore, this factor weighs in favor of plaintiff.

2. Area and manner of use

In considering this factor, courts look at "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties," CAE, 267 F.3d at 681, and "whether the parties use the same channels of commerce, target the same general audience, or use similar marketing procedures." Sorensen, 792 F.3d at 730 (citing id. at 681-82). The following considerations are important: (1) the relative geographical distribution areas; (2) whether there exists evidence of direct competition between the products; (3) whether the products are sold to consumers in the same type of store; (4) whether the products are sold in the similar section of a particular store; and (5) whether the product is sold through the same marketing channels. Fabick, Inc. v. FABCO Equipment, Inc., 296 F. Supp. 3d 1022, 1048-49 (W.D. Wis. 2017) (citing Ty, 237 F.3d at 900).

Both plaintiff and defendant operate their stores in Wisconsin and market their stores in similar ways. Plaintiff has a state-wide presence with stores and conferences in Madison, Portage, Baraboo, Wausau and Marshfield, whereas defendant's store was located in Plover and then relocated to Stevens Point. Defendant's store has always been located 35 to 40 miles from plaintiff's nearest store. Defendant argues that it chose to open its store in the Stevens Point and Plover area because there was an unfilled need in that community for a food pantry, affordable clothing and an employment-related charity. However, the existence of an unmet local need does not mean that defendant was not directly competing with plaintiff. Defendant uses similar methods to provide the same services and products that

plaintiff does and it targets the same general audience. Therefore, the evidence weighs in plaintiff's favor.

3.  Consumers' degree of care

"Generally, courts considering this factor assume that '[t]he more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases.'" Sorensen, 792 F.3d at 730 (quoting CAE, 267 F.3d at 683). "When customers use a lesser degree of care, this supports a finding that there is a likelihood of confusion." Id. In considering this factor, the court "must stand in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 831 (8th Cir. 1999). Price is not the only factor relevant to determine consumers' degree of care, or even necessarily determinative on its own. Nike, Inc. v. Just Did It Enterprises, 6 F.3d 1225, 1230 (7th Cir. 1993) ("Neither Nike nor the district court has cited any case where a customer's degree of care depends solely on price."). Certain consumer decisions may carry with them a greater standard of care based on the nature of the purchase. Kirkpatrick, Likelihood of Confusion in Trademark Law, § 6:5, at 6-12 to 6-14 (listing circumstances in which courts have held that consumers exercise an increased degree of care, such as "consultation with experts," "institutional purchasing practices," and "solicitation and comparison of proposals").

The whole point of the parties' thrift stores is to sell donated items at a very low cost, suggesting that consumers shopping in the stores are not exercising a great degree of care about the particular store in which they are shopping. The same would hold true for recipients of the parties' charitable services, such as food pantries.

In response, defendant raises a good point that people deciding which organization should receive their financial support or donated goods may exercise a significant amount of care in making their selection. For example, defendant has presented evidence that many people in defendant's local community recognize defendant's charitable works and have supported them in a variety of ways. The problem with defendant's argument is that given the strong similarities between the parties' marks, products and services, there is a significant risk that consumers are relying on a mistaken belief that defendant's organization is associated with plaintiff, which is a long-established, Catholic lay organization. In fact, as discussed below, there is evidence of some actual confusion between the two organizations. Such a situation could qualify as "forward confusion," which occurs where "customers mistakenly think that the junior user's good or services are from the same source as or are connected with the senior user's good or services." Sands, Taylor & Wood Co., 978 F.2d at 957. Similarly, "initial interest confusion" occurs when "a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated." Promatek Industries, Ltd. v . Equitrac Corp., 300 F.3d 808, 812-13 (7th Cir. 2002) ("What is important is not the duration of the confusion, it is the misappropriation of . . . goodwill."). In such cases, a defendant reaps the benefit of the

goodwill that plaintiff has developed in its mark. <u>Wolf Appliance, Inc. v. Viking Range Corp.</u>, 686 F. Supp. 2d 878, 892 (W.D. Wis. 2010). Regardless of its label, there is a significant risk that consumers are not exercising a sufficient degree of care to avoid confusion among the parties' services and products. Therefore, this factor weighs in plaintiff's favor.

4. <u>Strength of plaintiff's marks</u>

"The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." <u>CAE</u>, 267 F.3d at 684. The strength of a trademark is "commonly conceptualized as a spectrum, with coined terms and arbitrary marks on the strong end, suggestive terms in the middle, and descriptive terms on the weak end." <u>Bernatello's Pizza, Inc. v. Hansen Foods, LLC</u>, 173 F. Supp. 3d 790, 800 (W.D. Wis. 2016) (citing <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 768 (1992)). In addition to conceptual strength, courts look to "commercial strength," which turns on the degree of public recognition of the mark. Marks that are widely recognized merit greater protection from the courts. <u>Nike</u>, 6 F.3d at 1231. When analyzing the commercial strength of a mark, courts ask "whether the mark is strong enough that the public will form an association between the mark and the source of that particular good." <u>Sullivan v. CBS Corp.</u>, 385 F.3d 772, 777 (7th Cir. 2004). In addition, "a mark can be inherently distinctive and therefore strong or an otherwise weaker mark can acquire strength over time because the mark's owner has taken steps to make the mark well

known." Epic Systems, 244 F. Supp. 3d at 897 (citing Brennan's, Inc. v. Brennan's Restaurant, LLC, 360 F.3d 125, 130-31 (2d Cir. 2004)). When a mark has acquired strength, it has developed a "secondary meaning." Id. (citing Corbond Corp. v. Core Foam, Inc., 356 F. Supp. 2d 910, 918 (W.D. Wis. 2005)).

As plaintiff points out, I found in my previous order that defendant had not refuted plaintiff's contention in its motion for summary judgment that the "St. Vincent de Paul" is suggestive, arguing only that it was generic and commonly used to refer to charitable organizations. In addition, I discussed in the summary judgment order the fact that even though "St. Vincent de Paul" is the name of a deceased saint, it is more suggestive than descriptive of charitable services. Dkt. #84 at 20-23. Therefore, plaintiff's marks based on the St. Vincent de Paul name have moderate conceptual or inherent strength.

Acquired strength of a mark in a commercial sense can be determined in a number of different ways: direct consumer testimony; consumer surveys; the exclusivity, length, and manner of use of the mark; amount and manner of advertising for the mark; the amount of the owner's sales and number of customers; how established the owner's place in the market is; and intentional copying. Echo Travel, Inc. v. Travel Associates, Inc., 870 F.2d 1264, 1267 (7th Cir. 1989). See also AutoZone, 543 F.3d at 933 ("The AutoZone mark is displayed prominently on more than 3,000 stores nationwide, and it has been the subject of hundreds of millions of dollars' worth of advertising since 1987."). Plaintiff has not presented direct consumer testimony or conducted a survey to determine the strength of its mark, and it is not alleging a claim of intentional copying. In its motion for summary

judgment, plaintiff argued that it has used its marks since the late 1800s or early 1900s and that it is widely known for its charitable works. However, as discussed at length in the previous orders, it has failed to show with certainty the exclusivity, length and manner of use of its mark, particularly before the mid-2000s. Because the record is unclear in this respect, I cannot find as a matter of law that the strength factor definitely weighs in plaintiff's favor.

5. Actual confusion

"There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion." International Kennel Club, 846 F.2d at 1089. "Although evidence of actual confusion, if available, is entitled to substantial weight in the likelihood of confusion analysis, . . . this evidence is not required to prove that a likelihood of confusion exists." CAE, 267 F.3d at 685 (internal citations omitted).

Plaintiff has presented some evidence of actual confusion. It is undisputed that approximately every three months, members of the public inquire whether defendant is affiliated with plaintiff. Defendant also has not disputed that on November 28, 2014, the Stevens Point Journal published an article about defendant's new thrift store location, stating that "[t]he local store is a part of the St. Vincent de Paul Society," a "Catholic volunteer organization dedicated to serving the poor and disadvantaged." Pltf.'s PFOF ¶ 114, dkt. #54 and exh. #3 at 26. Defendant points out that the number of consumers expressing confusion is small in comparison to the total number of people that defendant

serves. However, even though plaintiff's evidence may be limited, it does show that consumers are confused about the source of plaintiff's marks on a regular basis. CAE, 267 F.3d at 686 ("One instance of actual confusion has been deemed sufficient to weigh in favor of finding a likelihood of confusion.").

Defendant does not refute this evidence but attributes the confusion to the existence of "many different institutions being inspired and guided by the deeply touching and inspiring example of St. Vincent de Paul." Dkt. #126 at 18. However, defendant's argument says little about actual confusion in this case and challenges the distinctiveness and strength of plaintiff's marks, which I have already addressed. Therefore, I find that this factor weighs in plaintiff's favor.

6. Defendant's intent

The following facts, which I found to be undisputed in the summary judgment order, show that defendant opened its thrift store under the St. Vincent de Paul name knowing full well that plaintiff was in existence and with the intent of providing similar services:

> In 1984, Joe Jersey became chairman of defendant's board of directors. At that time, the community center was struggling, so Jersey approached local Catholic parishes for help, but they were all too busy. However, he and other individuals wanted to move the charity forward even without the help of the parishes because there was a need for it in the community. In 1985, Jersey sent a letter and questionnaire to several of plaintiff's conferences that operated thrift stores, stating that defendant intended to operate a thrift store "consistent with all of the objectives of the Society of St. Vincent De Paul [sic]." Dkt. #39, exh. 5. The letterhead states "St. Vincent de Paul Community Center, Inc." and is addressed to "Dear Fellow Associate, St. Vincent DePaul [sic] Society." Id. Walter Traynor, the St. Vincent de Paul Society North Central Region Extension Chairman, wrote Jersey and reminded

> him that he had been told to start at the conference level before opening a
> thrift store. (Although plaintiff insists that Traynor acted on behalf of a
> separate and distinct regional organization of local councils and conferences,
> Jersey avers that he understood the letter to be from plaintiff.)
>
> Minutes from defendant's February 21, 1985 board meeting state that
> "[a]pparently, there was never a bona fide conference established but there
> should be one." Dkt. #51 at 41. The April 23, 1985 board meeting minutes
> reflect that defendant's board discussed being "able to do things typical of the
> St. Vincent De Paul style" and changing its operations to be similar to thrift
> stores affiliated with plaintiff. Id. at 39.

Dkt. #84 at 8.

As plaintiff seems to recognize, this is not a typical counterfeiting case in which defendant purposefully copied plaintiff's mark to deceive thrift store or food pantry consumers into believing that it was selling or distributing plaintiff's actual products or services. Dkt. #123 at 8-9 (distinguishing this case from counterfeiting case). Defendant contends that it is a charity whose members are volunteering to help the poor and that the St. Vincent de Paul name is "adjectival" and reflects the broader mission of helping those in need. The evidence shows that defendant intended to rely on plaintiff's name and service model to provide needed resources to a broader community.

The evidence adduced so far would not establish sufficient bad faith to support an award of enhanced damages under 15 U.S.C. § 1117(a). Bernatello's, 173 F. Supp. 3d 801 (finding same). But even if defendant may have modeled itself after plaintiff for good or charitable reasons, its good intentions do not change the fact that it knew it was using plaintiff's mark to provide the same type of products and services. Not only did defendant know of plaintiff's existence, it intentionally sought to establish a store similar to plaintiff's.

Fabick, 296 F. Supp. 3d at 1055 (mere knowledge of senior user's mark not enough to show intent on part of alleged infringer). That said, even though the evidence shows that defendant wanted to capitalize on plaintiff's name, it falls short of establishing defendant's intent to create confusion and exploit it. Therefore, this factor is neutral. However, defendant's intent to confuse is irrelevant in the likelihood of confusion analysis because it is not required to prove plaintiff's claims. CAE, 267 F.3d at 686 (finding same and citing Sands, Taylor & Wood, 978 F.2d at 961 (intent relevant only if defendant intended to palm off its goods as those of plaintiff); Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha, 754 F.2d 591, 598 (5th Cir. 1985) (intent immaterial when undisputed evidence shows that defendant acted in good faith); 3 McCarthy § 23:107).

7. Weighing of factors

I have found that the undisputed evidence shows that all but two of the factors related to likelihood of confusion—including the important factors of similarity of marks and actual confusion—weigh in plaintiff's favor. There are some issues of fact related to the strength of plaintiff's marks and the factor related to defendant's intent is neutral. Even though some of the factors weigh more strongly in plaintiff's favor than others, on balance, the evidence shows that consumers are likely to attribute the thrift stores and services offered by plaintiff and defendant to a single source. Defendant's good intention to provide charitable services in its local community does not change the fact that it selected word marks that pose a substantial likelihood of consumer confusion.

Therefore, no reasonable jury would find that the likelihood of confusion analysis favors defendant. Accordingly, because plaintiff has satisfied both elements of its Lanham Act claims regarding defendant's use of the marks that are the subject of plaintiff's '318 and '794 registrations, I am granting plaintiff's motion for summary judgment with respect to liability on those claims.

### B. Laches and Inevitable Confusion

Defendant has raised the affirmative defense of laches. However, under the doctrine of inevitable confusion, a senior user's claim is revived from estoppel by laches if the senior user can show that 'inevitable confusion' would result from dual use of the marks. Hyson USA, Inc. v. Hyson 2U, Ltd., 821 F.3d 935, 941 (7th Cir. 2016); TMT North America, Inc. v. Magic Touch GmbH, 124 F.3d 876, 886 (7th Cir. 1997); 6 McCarthy § 31:10 ("If it is inevitable that a significant amount of confusion will probably be created by the junior user's actions, a number of courts will find that the right of the public not to be confused and deceived outweighs the inequity to the junior user of the trademark owner's delay in suing."). "Inevitable confusion" is "an increment higher than that required for a finding of likelihood of confusion." SunAmerica Corp. v. Sun Life Assurance Co. of Canada (SunAmerica II), 77 F.3d 1325, 1334 n. 3 (11th Cir. 1996) (quoting Coach House Restaurant v. Coach and Six Restaurants, 934 F.2d 1551, 1564 (11th Cir. 1991)). "In determining whether plaintiff has satisfied this heightened burden, courts have found that evidence of actual confusion is critical, even though courts 'do not generally require evidence

of actual confusion in order to prove a likelihood of confusion.'" <u>Bobak Sausage Co. v. A & J Seven Bridges, Inc.</u>, 805 F. Supp. 2d 503, 513 (N.D. Ill. 2011) (quoting <u>Harley-Davidson, Inc. v. O'Connell</u>, 13 F. Supp. 2d 271, 285 (N.D.N.Y.1998)). In light of the facts that the parties' marks, products and services are almost identical and that there is evidence of actual confusion in this case, consumers would be inevitably confused by plaintiff and defendant's concurrent use of the St. Vincent de Paul marks. Because the evidence of confusion favors plaintiff so strongly in this case, no reasonable jury would find in defendant's favor on the inevitable confusion issue. Accordingly, defendant cannot prevail on its affirmative defense of laches.

## C. <u>Next Steps</u>

Plaintiff seeks entry of a permanent injunction under 15 U.S.C. § 1116, barring defendant from using plaintiff's trademark. To be entitled to injunctive relief, a plaintiff must demonstrate: (1) irreparable injury; (2) inadequate remedies at law; (3) the balance of hardships favors injunctive relief; and (4) the public interest would not be disserved. <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006). Because plaintiff has not yet argued that it satisfies this standard or addressed the terms of the proposed injunction, I will give the parties an opportunity to brief these issues at a later date. In the meantime, I will ask plaintiff to inform the court whether it will be seeking any monetary damages, whether there are any other issues remaining for resolution, whether it is necessary for the court to rule on plaintiff's motions in limine (dkt. ##103 and 104) and whether a jury trial is

necessary or if any remaining issues may be resolved after an opportunity for further briefing. Defendant will be given a similar opportunity with respect to any remaining issues and its motion in limine (dkt. #96).

ORDER

IT IS ORDERED that

1.  Plaintiff National Council of the United States Society of St. Vincent de Paul, Inc.'s composite mark (the '318 registration) is distinctive and protectable as a matter of law, which prevents defendant St. Vincent De Paul Community Center of Portage County, Inc. from defending against infringement on the ground that this mark lacks distinctiveness.

2.  The December 29, 2017 order granting in part and denying in part plaintiff's motion for summary judgment, dkt. #84, is AMENDED. Plaintiff's motion for summary judgment, dkt. #52, is GRANTED as to (a) liability on its Lanham Act claims regarding defendant's use of the marks that are the subject of plaintiff's '318 and '794 registrations; and (b) defendant's affirmative defense of laches.

3.  Plaintiff shall have until September 12, 2018 to inform the court whether it will be seeking any damages, whether it is necessary for the court to rule on its motions in limine (dkt. ##103 and 104), whether there are any other issues remaining for resolution and whether a jury trial is necessary or if any remaining issues may be resolved after an opportunity for further briefing. Defendant also may have until September 12, 2018 to inform the court whether there are any other issues remaining for resolution, whether it is

necessary for the court to rule on its motion in limine (dkt. #96) and whether a jury trial is necessary to resolve those issues. After the court has heard from the parties, it will set any deadlines needed for briefing.

Entered this 5th day of September, 2018.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge